UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. 4:18-CR-119 |
| ) | |
| v. ) | |
| ) | |
| ANTHONY WILSON JACKSON, ) | |
|    a/k/a "All Profit," ) | |
|    a/k/a "AP," ) | |
|    Defendant. ) | |

**GOVERNMENT'S TRIAL BRIEF AND PRETRIAL MOTION IN LIMINE**

The government respectfully submits this trial brief to present its anticipated evidence at trial, to address potential evidentiary issues, and to file a pretrial motion in limine to admit inextricably intertwined evidence that Defendant assaulted C.P. with the firearm and ammunition charged in this case.

**SUMMARY STATEMENT OF THE CASE**

On February 6, 2020, a federal grand jury returned a Superseding Indictment against Defendant charging him with (1) conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana in violation of Title 21, United States Code, Section 846; (2) conspiracy to unlawfully use interstate facilities to promote a prostitution business in violation of Title 18, United States Code Sections 371; (3) possession with intent to distribute a quantity of marijuana in violation of Title 21, United States Code, Section 841(a)(1); (4) possession of a machinegun in violation of Title 18, United States Code, Section 922(o); (5) possession of a machinegun in furtherance of a drug-trafficking crime in violation of Title 18, United States Code,

1

Section 924(c); (6) possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1); (7) possession of ammunition in violation of Title 18, United States Code, Section 922(g)(1); and (8) money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h).  Dkt. No. 213.  This Superseding Indictment charges Defendant for his role in a criminal organization that involved drug trafficking, interstate prostitution, and money laundering in Savannah, Georgia and elsewhere.

The case began in May 2016 when agents with Homeland Security Investigations (HSI) and Savannah Police Department (SPD) were looking for a missing woman, later identified as Eva Fullmer who worked as a prostitute for Defendant Jackson.  A friend of Fullmer posted a missing person advertisement on Backpage.com.  Backpage.com was a classified advertising website and had an adult escort section for prostitution advertisements.  While searching for Fullmer, agents uncovered Defendant's drug trafficking and prostitution business that operated throughout the United States.

Agents interviewed multiple witnesses, conducted physical surveillance, obtained online prostitution advertisements, conducted several undercover operations related to the prostitution business, obtained travel records for conspirators traveling in connection with the prostitution business, obtained hotel records for conspirators using hotel rooms for the prostitution business, obtained bank records in connection with the drug-trafficking business, secured two federal court authorized wiretaps, executed multiple search warrants, forensically copied

and reviewed multiple cell phones, and interviewed conspirators. The investigation revealed that Defendant Jackson was the leader of an interstate prostitution organization and conspired with co-defendants Princess Davis, Jasmine Watkins, Demona Bryant, and others to use cell phones and the internet to promote an interstate prostitution business.

Defendant Jackson consistently had at least one female working for him and performing commercial sex acts throughout the United States. Defendant Jackson transported or facilitated travel for women working in his prostitution business throughout the United States. The women working for Jackson would sometimes travel and remain in Savannah, Georgia performing commercial sex acts at hotels, and travel throughout the United States to perform commercial sex acts at Defendant Jackson's direction.

Co-defendant Princes Davis assisted Defendant Jackson's prostitution business by purchasing plane tickets, renting hotel rooms, bonding out women arrested for prostitution, and depositing money in various bank accounts, all at Defendant Jackson's direction. Co-defendant Jasmine Watkins performed commercial sex acts in Savannah, Georgia and Detroit, Michigan in connection with Defendant Jackson's prostitution business. Co-defendant Demona Bryant performed commercial sex acts in Savannah, Georgia and Las Vegas, Nevada in connection with Defendant Jackson's prostitution business. Eva Fullmer, the women who was missing, also performed commercial sex acts in Savannah, Georgia in connection with Defendant Jackson's prostitution business. To prove that

Defendant Jackson was the leader in the conspiracy to use interstate facilities to promote a prostitution business (Count Two), the government anticipates offering evidence of conspirator statements, phone records, Backpage advertisements, travel records, law enforcement observations based on physical surveillance, and jail phone calls in connection with prostitution arrests.

In addition to leading and directing his interstate prostitution business, Defendant Jackson trafficked marijuana from California to Savannah, Georgia. Conspirators in California used the United States Postal Service to mail marijuana from California to various locations in Savannah, Georgia used by both Defendant Jackson and co-defendant Princess Davis.  Co-defendant Princess Davis assisted Defendant Jackson's drug-trafficking business by depositing money earned from trafficking marijuana into multiple bank accounts.  To prove that Defendant Jackson conspired to possess with intent to distribute over 1,000 kilograms of marijuana (Count One) and to engage in money laundering (Count Eight), the government anticipates offering evidence of conspirator statements, phone records, text messages, bank records, photographs, postal mailing labels, marijuana seized, and cash seized.

In October 2017, Defendant Jackson pointed a firearm and threatened C.P., his cousin, at a family funeral.  Right before Defendant Jackson pointed the firearm at C.P.'s face, Defendant Jackson racked the firearm and a bullet ejected from the chamber.  C.P. saw that the bullet had a blue tip and referred to it as "cop killer" ammunition.  In January 2018, law enforcement seized the firearm Defendant

4

Jackson pointed at C.P. from a vehicle he drove (Count Six) and a box of blue tip ammunition used in the firearm from his bedroom (Count Seven). ATF examined the blue tip ammunition seized from Defendant Jackson's bedroom and determined that this caliber of ammunition is often referred to as "cop killer" ammunition because it can penetrate certain kinds of ballistic vests.

On January 2, 2018, law enforcement obtained a search warrant for Defendant Jackson's home located at 9 Crestwood Ct., Savannah, Georgia. During the execution of the search warrant, law enforcement seized approximately seven pounds of marijuana inside a mail package from California, a digital scale, over $7,000 in cash, and multiple mailing labels from California. This marijuana seized from Defendant Jackson's home is the basis for Count Three. Inside Defendant Jackson's bedroom, law enforcement seized a fully automatic Glock 23, .40 caliber pistol – the machinegun charged in Counts Four and Five.

Experts with ATF examined the fully automatic Glock 23, .40 caliber pistol and determined it was converted into a machinegun. This machinegun was not registered to Anthony Jackson in the National Firearms Registration and Transfer Record as required. Law enforcement also processed the firearm for DNA evidence and obtained a search warrant for a sample of Defendant's DNA. A forensic serologist compared the DNA collected from the machinegun to the DNA collected from Defendant Jackson. The forensic serologist concluded that Defendant Jackson is a major contributor to the DNA recovered on the machinegun. The forensic serologist further concluded that the chance that an unrelated person would have the

same profile is approximately 1 in 22 nonillion – a number larger than the total number of people on planet earth in the entire history of planet earth.

## CO-CONSPIRATOR EVIDENCE

At this time, the government anticipates that it will call co-conspirator Princess Davis and possibly Jasmine Watkins to testify in its case in chief against Defendant Jackson. Defendant Jackson is charged with three separate conspiracies in the Superseding Indictment. Dkt. No. 213. In Count One, Defendant Jackson is charged with conspiring with Davis to possess with intent to distribute 1,000 kilograms or more of marijuana. In Count Two, Defendant Jackson is charged with conspiring with Davis and Watkins to unlawfully use interstate facilities to promote a prostitution business. In Count Three, Defendant Jackson is charged with conspiring with Davis to engage in money laundering conspiracy. Watkins previously pled guilty to Count Two of the underlying Indictment (Dkt. Nos. 104, 156-157) and was sentenced to 20 months in prison. Dkt. No. 201. Davis previously pled guilty to the lesser-included offense in Count One, Count Two, and Count Eight of the underlying Indictment (Dkt. Nos. 104, 208-209) and her case is pending sentencing. Dkt. No. 209.

To prove that Defendant Jackson was a member of the conspiracies, the government must show that the conspiracies existed, that Defendant Jackson knew of it, and that he intended to associate himself with the objectives of the conspiracies. *United States v. Horton*, 646 F.2d 181, 184 (5th Cir. 1981). For Count Two, the general conspiracy, the government must also show that one of the conspirators

knowingly engaged in at least one overt act as described in the indictment and the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. *United States v. McNair*, 605 F.3d 1152, 1213 (11th Cir. 2010).

For purposes of proving a conspiracy exists, the overt acts of one conspirator may be imputed to his partner in crime. *See United States v. Monaco,* 702 F.2d 860, 881 n. 38 (11th Cir.1983) (member of conspiracy liable for all foreseeable crimes committed in furtherance of the conspiracy); *United States v. Enstam,* 622 F.2d 857, 867 (5th Cir.1980) (only necessary for one co-conspirator to commit overt act); *United States v. Veltre,* 591 F.2d 347, 350 (5th Cir.1979) (once conspiracy shown, proof of single overt act done in furtherance of conspiracy establishes the guilt of each member). Since the reason for requiring proof of an overt act is to demonstrate that the conspiracy is operative, the overt act may be lawful or unlawful conduct. *United States v. Buckner,* 610 F.2d 570, 573 (9th Cir.1979); *United States v. Miller,* 491 F.2d 638, 644 (5th Cir.), *cert. denied,* 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974).

Defendant Jackson never withdrew from the conspiracies and he is responsible for the acts of a co-conspirator that were necessary or a natural consequence of the conspiracy. *See United States v. Marable*, 574 F. 2d 224, 230 (5th Cir. Cir. 1978). The government anticipates that co-conspirator testimony will establish that (1) the conspiracies existed; (2) Defendant Jackson knew of it; (3) Defendant Jackson intended to associate himself with the objectives of the conspiracies; and (4) at least one of the overt acts listed in the Superseding Indictment was committed.

## SUMMARY CHARTS

The government intends to streamline its case in chief against Defendant by presenting evidence through law enforcement agents in the form of summary testimony and charts, pursuant to Federal Rule of Evidence 1006. The evidence in this case is voluminous and substantial. For example, there are ten bank accounts spanning dates between July 1, 2009 and May 17, 2017 with over 10,000 pages. The government anticipates that it will summarize bank records, text messages, telephone records, online prostitution advertisements, and United States Postal Service records by way of summary charts. This will greatly expedite the government's presentation of the evidence.

Under Federal Rule of Evidence 1006, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed.R.Evid. 1006. Charts may incorporate assumptions, so long as they are "supported by evidence in the record." *United States v. Richardson,* 233 F.3d 1285, 1294 (11th Cir.2000) (quotation omitted). The court must also make it clear to the jury they are to decide what weight to give to the evidence. *Id.* Additionally, where the defendant "has the opportunity to cross-examine a witness concerning the disputed issue and to present its own version of the case, the likelihood of any error in admitting summary evidence diminishes." *Id.* (quotation omitted). *United States v. Scott,* 427 F. App'x 869, 871 (11th Cir. 2011).

If the government were to publish all of the relevant, admissible records, the jury would be faced with reviewing thousands of pages of documents. The

government has made available to the defense all of the records. The summary charts will be accurate and non-prejudicial, and the charts will be provided to defense counsel in advance of trial.

### MOTION TO ADMIT EVIDENCE THAT DEFENDANT PREVIOUSLY ASSAULTED C.P. WITH THE FIREARM AND AMMUNITION CHARGED IN COUNTS SIX AND SEVEN

The government respectfully requests a pretrial ruling on the admissibility of inextricably intertwined evidence. The government anticipates that C.P. will testify that in October 2017, Defendant Jackson possessed the firearm and ammunition charged in Counts Six and Seven when he pointed the firearm and threatened her. The government further anticipates that C.P. will testify that right before Defendant Jackson pointed the firearm at her face, racked the firearm and a bullet ejected from the chamber. C.P. will explain that she saw the bullet had a blue tip and referred to it as "cop killer" ammunition. In January 2018, law enforcement seized the firearm Defendant Jackson pointed at C.P. from a vehicle he previously drove (Count Six) and a box of blue tip ammunition used in the firearm from his bedroom (Count Seven). ATF examined the blue tip ammunition seized from Defendant Jackson's bedroom and determined that this caliber of ammunition is often referred to as "cop killer" ammunition because it can penetrate certain kinds of ballistic vests.

Rule 404(b) excludes evidence that is extrinsic to the charged offense and offered only to show that a person acted in conformity with his character on a particular occasion. *See* Fed.R.Evid. 404(b). Evidence is not extrinsic, and therefore falls out of the scope of Rule 404(b), if it is: "(1) an uncharged offense which arose out

9

of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard,* 485 F.3d 1324, 1344 (11th Cir.2007) (internal quotation marks and citations omitted). The Eleventh Circuit repeatedly recognizes that '[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context ... is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime ... to complete the story of the crime for the jury." *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004) (quoting *United States v. McLeon*, 138 F.3d 1398, 1403 (11th Cir. 1998) and *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). "Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." *Id.* Rule 403 provides that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

The assault with the firearm and ammunition in October 2017 is part and parcel of the charged possession of firearm and ammunition in Counts Six and Seven. Defendant Jackson's prior possession of the firearm and ammunition in October 2017 help prove that Defendant Jackson knew about the firearm located in the vehicle he drove and the ammunition in his bedroom in January 2018. Thus, the prior assault

and possession arose out of the same transaction or series of transactions as the charged offenses and are inextricably intertwined with the evidence. The prior assault and possession prove the crimes charged and are admissible so the jury may evaluate all of the circumstances under which Defendant Jackson acted. *See United States v. Ridlehuber*, 11 F.3d 516, 521 (5th Cir. 1993).

In addition, the Eleventh Circuit recognizes that evidence of a defendant's assaultive behavior may be admitted in a felon in possession of a firearm case as inextricably intertwined evidence. *See United States v. Wright*, 392 F.3d 1269 (11th Cir. 2004). In *Wright*, the defendant was charged with one count of felon in possession of a firearm. *Id*. at1271. The Eleventh Circuit permitted evidence of uncharged misconduct, including resisting arrest and battery of a law enforcement officer during the defendant's arrest because it found it to be inextricably intertwined with the charged criminal activity. *Id*. at 1276. The Court found that "evidence of Wright's actions prior to the discovery of the firearm gives the jury the body of the story, not just the ending. Such evidence was "inextricably intertwined" with the charged offense." *Id*.

In this case, the anticipated testimony that Defendant Jackson possessed the firearm and ammunition months earlier when he pointed the firearm at C.P., threatened her, and racked the firearm to eject the cop killer ammunition is inextricably linked with the charged conduct of possession of a firearm and ammunition by a convicted felon. The evidence is part and parcel of the crimes charged and will prove knowledge of the crimes charged. Moreover, under the Rule

11

403 balancing test, the probative value of the evidence far outweighs the prejudicial effect.

## CONCLUSION

The government respectfully submits this trial brief to address anticipated evidence at trial and to move for a pretrial ruling to admit inextricably intertwined evidence that Defendant previously assaulted C.P. with the firearm and ammunition charged in Counts Six and Seven.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*s/Tania D. Groover*
Assistant United States Attorney
Georgia Bar No. 127947

22 Barnard Street, Suite 300
Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422